IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE: ) | |
| ) | |
| LOUISIANA-PACIFIC INNER-SEAL SIDING ) | No. 3:95-cv-00879-JO (LEAD) |
| LITIGATION ) | |
| ) | OPINION AND ORDER |
| ) | |

Warren J. Daheim
GORDON THOMAS HONEYWELL LLP
1201 Pacific Avenue, Suite 2100
P. O. Box 1157
Tacoma, WA 98401-1157

    Attorneys for Class Member Canterbury Apartment Homes LLC

Julia E. Markley
PERKINS COIE
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128

Ashley A. Locke
PERKINS COIE
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099

    Attorneys for Defendant Louisiana-Pacific Corporation

Christopher I. Brain
TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, 56th Floor
AT&T Gateway Tower
Seattle, WA 98104-5056

Co-Lead Class Counsel

Christopher I. Brain
TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101-1332

JONES, J:

L-P and Class Counsel have filed a joint motion to enforce the settlement agreement in this Inner-Seal Siding class action against Canterbury Apartment Homes LLC ("plaintiff"), asking the court to order plaintiff to take no further steps to prosecute any released claims against L-P and to dismiss with prejudice all claims plaintiff alleges in his Washington state court complaint, filed in November 2011. Plaintiff opposes the motion and moves to strike the declaration of Class Counsel Christopher Brain.

## BACKGROUND

In October 1995, Magistrate Judge Jelderks preliminarily approved the class action settlement and an initial form of notice to class members. As defined in the preliminary settlement agreement, "Settlement Class" included "all Persons who have owned, own, or subsequently acquire Property on which Exterior Inner-Seal™ Siding has been installed prior to January 1, 1996 who are given notice in accordance with the Due Process Clause of the United States Constitution." Declaration of Ashley Locke ("Locke Decl."), Exhibit ("Exh.") G, p. 6. The only exclusions from the class were persons who opted out, and persons who were members of a Florida class action. Id. at pp. 6-7.

PAGE 2 - OPINION AND ORDER

The initial notice informed recipients that:

> You may be a part of this Class if you: have owned, own, or subsequently acquire a home or structure in the United States on which exterior L-P Inner-Seal Siding was installed prior to January 1, 1996, and that siding is damaged or becomes damaged and you submit a claim prior to January 1, 2003.

Id. at p. 38. The notice explains who is excluded, i.e., those who opt out and those involved in the Florida litigation. The notice explains that a settlement class member shall be an "Eligible Claimant" entitled to the benefits of the settlement agreement "if he or she has incurred damage or incurs such damage to exterior L-P Inner-Seal Siding installed prior to January 1, 1996, and files a claim prior to January 1, 2003." Id. at p. 39.

At the fairness hearing I conducted in April 1996, I raised concerns about certain aspects of the settlement, as did participants at the hearing. As a result, on April 26, 1996, counsel signed an Amendment to Settlement Agreement, Exh. H to the Locke Decl. As relevant here, the amendment revised the definition of "Settled Claim" to exclude "claims made against L-P after the expiration of the term of the Settlement Agreement under the express terms of the L-P 25-year Limited Warranty issued with the product." Locke Decl., Exh. H, p. 2.

On April 22, 1996, I approved the settlement as amended, and on April 26, 1996, signed the Order, Final Judgment and Decree, and a Notice of Approval of Settlement. The Approval Notice described the amendments to the settlement agreement and was sent to persons who had not opted out of the original version; a similar notice was sent to persons who had opted out. See Declaration of Christopher Brain ("Brain Decl."), Exh. 2 (Notice of Approval and cover letter); and Declaration of Warren Daheim ("Daheim Decl."), Exh. G (supplemental notice to opt-outs). For members of the class who had not opted out, the opt out date was extended to May 27, 1996. Brain Decl., Exh. 2, p. 1.

PAGE 3 - OPINION AND ORDER

Significant to the present controversy is the wording of the amendment to the settlement agreement concerning the 25-year warranty. The Notice of Approval explains, in a section titled "New Terms From the Last Notice," that

> In the original notice, you were informed that claims under the Settlement must be made by January 1, 2003, after which L-P had no obligations to replace or repair damaged siding.
>
> As a result of continuing negotiations, and after considering the views of Class Members, L-P has now agreed to reinstate the 25 year warranty after January 1, 2003. <u>This means that if you do not make a claim by January 1, 2003, but your siding fails after January 1, 2003, you can still make a claim under the warranty.</u> All claims other than warranty claims (excluding those for consequential damages as described in Paragraphs 5e and 5i) will be released if you stay in the Class. You should remember that most warranties issued for L-P Inner Seal Siding had a depreciation schedule so that by the year 2003 your recovery under the warranty will have depreciated.

Brain Decl., Exh. 2, p. 4 (emphasis added).

## PLAINTIFF

Plaintiff owns a multi-structure apartment building that was built during 1994-1995. L-P Inner-Seal siding was installed on the structures in varying amounts and locations. All siding was installed before January 1, 1996.[1] Thus, plaintiff fits the definition of "Class Member" as set forth in the original notice, i.e., "all Persons who have owned, own, or subsequently acquire Property on which Exterior Inner-Seal™ Siding has been installed prior to January 1, 1996 . . . ." Locke Decl., Exh. G, p. 38. Plaintiff was not, however, an "<u>Eligible</u> Claimant," because it had not "incurred damage" and did not "incur[] such damage to exterior L-P Inner-Seal Siding

---

[1] Evidently the original owner was Firgrove Associates, which merged with plaintiff in December 1998. Ray Dally and his wife beneficially owned and still own majority interests in Firgrove and plaintiff.

PAGE 4 - OPINION AND ORDER

installed prior to January 1, 1996" during the settlement period that ended January 1, 2003. Id. at 39 (emphasis added).

Plaintiff states that in 1995, its predecessor Firgrove purchased and properly installed L-P Inner-Seal siding. It did so knowing of publicity concerning potential problems with the siding, but "was assured by the distributor that LP had made product changes which cured the problems that brought about the class action." Plaintiff's Opposition, p. 4. According to plaintiff, the siding did not become damaged "at any point prior to January 1, 2003." Id. at 5.

Plaintiff's state court complaint, Exhibit A to the Locke Decl., alleges that plaintiff's siding, which falls within the parameters of the siding addressed in the class action, did not fail until after termination of the settlement period, that is, did not fail before January 1, 2003. It appears from documents of record that plaintiff first noticed early signs of deterioration in December 2008. See Daheim Decl., Exh. D.

Plaintiff made a claim under the L-P 25-year warranty. After inspection of all 24 buildings, calculation of the damaged area, and considering the depreciation schedule under the warranty, etc., L-P offered plaintiff $8,383.32. Locke Decl., Exh. 3. Plaintiff rejected the offer, and in September 2011, plaintiff began replacing all of the siding rather than selectively replacing it, incurring approximately $900,000 in replacement costs, which is the amount plaintiff seeks in damages.

Plaintiff filed his state court complaint on November 15, 2011. The complaint alleges three claims: breach of the written warranty; breach of warranties created by advertising and similar communications to the public; and violation of the Washington Consumer Protection Act.

## THE PARTIES' ARGUMENTS

Plaintiff's argument is fairly straightforward. Plaintiff proposes that it reasonably believed it was not a class member due to the class description:

> The Settlement Class is currently composed of those who meet the following criteria:
>
> You may be part of this Class if you: have owned, own, or subsequently acquire a home or structure in the United States on which exterior L-P Inner-Seal Siding was installed prior to January 1, 1996, **and** that siding is damaged or becomes damaged **and** you submit a claim prior to January 1, 2003.

"And" is emphasized in that paragraph because that is the focus of plaintiff's argument, that when it received the notice, the siding was intact and remained intact through January 1, 2003. See Plaintiff's Opposition, pp. 4-5.

Essentially, plaintiff asserts that the class action notice was unconstitutionally misleading in that it did not apprise potential class members "with sufficient clarity to enable them to make reasoned decisions about how to proceed." Id. at p. 8. Plaintiff also argues that even if it was bound by the class notice, any release of claims was not binding as plaintiff received no consideration. Finally, plaintiff contends, relying on Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997), that any class settlement purporting to resolve the claims of potential, future plaintiffs who have suffered no injury at the time of class certification is invalid.

With respect to the Amchem case, which involved the class certification of asbestos-related claims for the purpose of settlement, it does not hold, as plaintiff suggests, that inclusion of plaintiffs who had not yet suffered injury is invalid. As L-P correctly observes:

> *Amchem* involved the class certification of asbestos-related claims for the purpose of settlement. 521 U.S. at 591. Plaintiff cites *Amchem* in arguing that the Claimant Notice here was inadequate, but *Amchem* actually centered on the scope

>of the class certification itself, not the notice provided. *Id.* at 606, 628. The *Amchem* court evaluated the scope of the class members because the *Amchem* class embraced "hundreds of thousands, perhaps millions, of individuals," *id.* at 597, including those exposed to asbestos or products containing asbestos that were traced back to any one or more of a number of different defendants, and those exposed to asbestos or products containing asbestos by virtue of a spouse's or household member's exposure, *id.* at 602.
>
>The *Amchem* class included members who already suffered physical injuries as well as members who had not manifested any personal injuries from asbestos. *Id.* at 603. The settlement outlined four types of categories of disease that those who had not yet manifested personal injuries could suffer: mesothelioma, lung cancer, other cancers, and non-malignant conditions. *Id.* The Supreme Court described the significant factual differences in the class members and their injuries: "In contrast to mass torts involving a single accident, class members in this case were exposed to different asbestos-containing products, in different ways, over different periods, and for different amounts of time . . . . Each has a different history of cigarette smoking, a factor that complicates the causation inquiry." *Id.* at 609, 624 (quotation marks and citation omitted). It was against this backdrop that the Court evaluated the proposed class certification for settlement purposes, finding that the "disparate questions" in each *Amchem* class member's case rendered the class certification unable to sufficiently benefit each class member. *Id.* at 624 (finding commonality and adequacy of representation not met).
>
>Unlike *Amchem*, here the potential damage triggering event here was defined — installation of one specific manufacturer's specific type of siding — and purely economic.

Reply in Support of Joint Motion, pp. 9-10.

With respect to plaintiff's argument that it did not receive consideration, if plaintiff is a class member, then it got the same consideration all class members got: the right to file claims for damage every year for seven years, plus the right to pursue future damages under the 25-year warranty.

Finally, with respect to plaintiff's arguments about notice, L-P puts its emphasis on a different aspect of the class description; specifically, on the language "is damaged **or becomes damaged**," and contends that the highlighted language put recipients "on notice that they were Class Members even if their LP Siding had not yet suffered damage." Reply in Support, p. 8 (emphasis added). In this court's view, an even more compelling reason for finding that plaintiff did indeed receive reasonable notice that it was a class member is the language concerning the 25-year warranty added by amendment to the settlement agreement and included in the Notice of Approval. That language plainly informs recipients, including plaintiff,[2] that:

> As a result of continuing negotiations, and after considering the views of Class Members, L-P has now agreed to reinstate the 25 year warranty after January 1, 2003. <u>This means that if you do not make a claim by January 1, 2003, but your siding fails after January 1, 2003,</u> you can still make a claim under the warranty.

Brain Decl., Exh. 2, p. 4. At that point, plaintiff still could have opted out of the class action, as the opt out date was extended, but chose not to.

In summary, I conclude that plaintiff is a class member and plaintiff's remedy, if any, is the 25-year warranty. L-P claims that plaintiff cannot pursue the warranty claim in state court, but the warranty does not contain any language precluding state court action. Thus, I grant L-P's and Class Counsel's motion (# 694) with respect to all of plaintiff's claims except the warranty claim.[3]

---

[2] Plaintiff does not contend that it did not receive the initial class action notice or the Notice of Approval, which explained the amendments to the original settlement terms. Instead, plaintiff disregarded the notices because it concluded that it was not a member of the settlement class.

[3] Plaintiff moves (# 710) to strike the Declaration of Christopher Brain for a variety
(continued...)

## CONCLUSION

L-P's and Class Counsel's motion (# 694) to enforce settlement agreement is granted and denied as set forth above. Plaintiff is hereby ordered to dismiss all claims asserted in his state court complaint except the written 25-year warranty claim. Plaintiff's motion (# 710) to strike declaration of Christopher Brain is denied as moot.

IT IS SO ORDERED.

DATED this 26th day of July, 2012.

_____
ROBERT E. JONES
U.S. District Judge

---

[3](...continued)
of reasons, but because I relied only on the exhibits to the declaration, not Brain's statements, the motion is denied as moot.

PAGE 9 - OPINION AND ORDER